UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID AFFER,

        Plaintiff,

v.                                Case Number: 05-74064

SCOTT TAYLOR, SCOTT HARDING, and    HON. MARIANNE O. BATTANI
CITY OF WARREN,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants City of Warren, and police officers Scott Taylor and Scott Harding's Motion for Summary Judgment (Doc. No. 34). The Court informed the parties that the motion would be resolved on the pleadings and issued a scheduling order. See E. D. Mich. LR 7.1(e)(2). The Court has reviewed the pleadings, and for the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

**I. STATEMENT OF FACTS**

On November 15, 2004, Defendant police officers Scott Taylor and Scott Harding were called to a traffic stop of Plaintiff, David Affer. According to the First Amended Complaint ("FAC"), Defendants "physically beat and abused, assaulted and battered, used excessive force and violence against, and violated the Constitutional Rights of Plaintiff, including, but not limited to excessive, inappropriate and unnecessary use of pepper spray." FAC at ¶ 8. Plaintiff advances claims of assault and battery (Count I), gross negligence (Count II), and excessive force (Count III) against the individual

Defendants, as well as municipal liability against the City of Warren (Count IV).

According to the police officers, Plaintiff resisted their attempts to handcuff him, and he was sprayed with pepper spray. Defs.' Ex. A. The officers put Plaintiff into the rear of the patrol car. At the time of the arrest, Plaintiff smelled of alcohol, had a large lump on his forehead, bloodshot eyes, and slurred speech. Defs.' Ex. A. According to the officers, Plaintiff would threaten to fight them and then laugh and say, "I like you guys." Id.

Affer refused a chemical breath test. After a search warrant for a blood draw was issued, the officers transported Affer to a clinic. Affer refused to give blood and had to be restrained. According to Officer Harding, Plaintiff "obviously had a fear of needles." Defs.' Ex. G at 35. Plaintiff was twitching and at some point, the nurse was "poked with his needle." Id. Harding testified that thereafter the officers "were forced to do everything [they] could just to keep [Affer] still so that [the nurse] could complete the blood draw" Id. Harding testified that Affer was kicking and flailing. Id. at 37. Officer Taylor used pressure point techniques on the mandibular and under the nose to control Affer. Id. at 36.

Affer admitted he had been binge drinking. Defs.' Ex. E, Pl.'s Dep at 19. He testified that he did not resist the officers in any way. Pl.'s Ex. A, Pl.'s Dep. at 46. Affer also contends that at the clinic, he was thrown against a wall.

## II.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

2

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the

cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

### III. ANALYSIS

Plaintiff seeks relief under federal and state law.  Defendants move for summary judgment on each basis of relief.

#### A. Federal Claims

Plaintiff pursues his federal claims under 42 U.S.C. § 1983.  It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).    There is no dispute that Defendant officers were acting under color of state law. The federal rights at stake include freedom from excessive force[1] and municipal liability.

### 1. Excessive Force

To determine whether Plaintiff has made a prima facie case for the deprivation of constitutional rights arising from the alleged excessive force, the Court analyzes the conduct under the Fourth Amendment and its "reasonableness standard."  Graham v. Connor, 490 U.S. 386, 394-95 (1989).   The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ."  U.S. Const. amend. IV.

To determine whether a particular use of force is reasonable as opposed to

---

[1] Defendants maintain that Plaintiff's federal claims must be dismissed because Plaintiff did not identify the particularized right at issue.  Although the Court granted Defendants leave to file their dispositive motion despite missing the deadline set forth in the Court' scheduling order, their reliance on a pleading deficiency at this stage of the proceedings is misplaced.  Defendants cannot claim to be unaware of the basis for Plaintiff's federal claims.

excessive, one must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." Graham, 409 U.S. at 396. The test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The question is whether an officer's action was "objectively reasonable" given the facts and circumstances confronting the officer at the time of the use of force. Id. Not every push or shove gives rise to a § 1983 claim, nor will a minimal use of force support such a claim. Id.; Collins v. Nagle, 892 F.2d 489, 496 (6th Cir. 1989).

In assessing whether the officers' conduct was reasonable as a matter of law, the Court must resolve factual disputes in favor of Plaintiff, the nonmoving party. The Court observes that an officer may use force to gain compliance with an order; however, "even where some force is justified, the amount actually used may be excessive." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). Therefore, even if the officers were entitled to use force to arrest Plaintiff, the degree of force used must have been reasonable as a matter of law for Defendants to succeed in their motion.

According to Defendants, Harding and Taylor used a reasonable amount of force under the circumstances. Plaintiff had left the scene of an accident, was driving while intoxicated, and threatened physical harm to the officers. Defendants' version of the arrest is contested.

Specifically, Affer testified that he did not resist arrest; that the officers grabbed him by the hair and slammed him face first on the trunk of the police car. Pl.'s Ex. A at

45-6, 49, 50.  He testified that after the officers handcuffed him, they pepper sprayed him, bounced him off the roof and door of the patrol car, laughed and taunted him, saying, "Ha ha, you're supposed to duck."  Id. at 49-50.  According to Plaintiff, the officers pepper sprayed him after he was handcuffed even though he was not resisting arrest.  Id.  Affer assert that he suffered a cut on his forehead, a broken jaw, back eyes, a bloody nose, knots all over his head, and a sore neck.  Id. at 59.  He testified that none of his injuries were the result of the auto accident.

      Here, there is no evidence presented that Defendants perceived Plaintiff as a threat to their safety.  Officer Taylor testified that he was not intimidated by Plaintiff, but was aware Plaintiff could become combative.  Defs.' Ex. F at 82.  The crime giving rise to Plaintiff's arrest was serious, but not one of violence.  Plaintiff had already been stopped and seized by a Centerline police officer when Harding and Taylor arrived at the scene.  Although Plaintiff became verbally combative, he denies any physical resistance to the officer's orders.  When viewed in the light most favorable to Plaintiff, his conduct at the time of his arrest appears more a function of his intoxication than an intent to do harm to the officers or others.  Further, Affer's conduct during the blood draw appears to be a result of his fear of needles rather than aggression toward the officers or others.  Based on these facts, the Court cannot say as a matter of law that Taylor and Harding's conduct was objectively reasonable.  The circumstances facing the officers at the time of the initial decision to use force were not particularly "tense," or "uncertain."  See Graham, 490 U.S. at 396-97.

### 2. Qualified immunity

Defendants raise the affirmative defense of qualified immunity. Qualified immunity is available to governmental employees when operating within the scope of their assigned duties. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). When resolving whether a defendant is entitled to qualified immunity, the court must resolve whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2002). If the answer is yes, the court must determine whether the right was clearly established. Id.

Here, Plaintiff contends that the officers pepper sprayed him after he was handcuffed and that he never resisted arrest. Clearly, if a jury were to credit Plaintiff's version of the events, the conduct of the police officers relative to the initial contact is not entitled to immunity. Further, Plaintiff's right to be free from force under those circumstances was clearly established at the time. The same analysis applies to the conduct relative to the blood draw inasmuch as Plaintiff claims he was injured after he was slammed into the wall. Accordingly, Defendants' request for qualified immunity is denied.

### 3. Municipal Liability

Plaintiff includes a claim against the City in his First Amended Complaint for failure to train, supervise, and discipline its officers. To recover against the City, Plaintiff must show that his civil rights were violated pursuant to and as a direct result of its official policy or custom. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-95 (1978). The alleged unconstitutional action must implement

8

either a policy or ordinance officially promulgated by the City, or constitute a governmental "custom" which, although not formally adopted, "can fairly be said to represent official policy." Id. at 690-91, 694. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the City, and that the policy or custom caused his constitutional violation. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); Doe v. Claiborne County, Tenn., 103 F.3d 495, 507 (6th Cir. 1996).

To prove that the City of Warren has an unconstitutional policy of failing to train, a plaintiff "must prove that the training program is inadequate to the task an officer must perform; that the inadequacy is the result of deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989)). Plaintiff has advanced no evidence showing the existence of an unconstitutional policy or custom. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). He failed even to respond to Defendants' request for summary judgment on this claim.

Consequently, the Court finds that Plaintiff has failed to meet his burden on summary judgment. Therefore, Defendants are entitled to summary judgment on Count IV of the FAC.

### B. State Claims

In addition to Plaintiff's federal claims, he asserts violations of state law. Specifically, Plaintiff advances claims of assault and battery and gross negligence. The Court discusses the merits of each below.

#### 1. Assault and battery

In Michigan, a police officer who uses excessive force may be held liable for assault and battery. White v. City of Vassar, 403 N.W.2d 124 (1987). Moreover, the governmental tort liability act, MICH.COMP.Laws §691.1401 et seq., does not provide individual officers with immunity for intentional torts such as assault and battery. Sudul v. City of Hamtramck, 562 N.W.2d 478 (1997). In light of the Court's finding relative to the excessive force claim, summary judgment on this state claim must likewise be denied.

#### 2. Gross Negligence

An employee of a governmental agency acting within the scope of his authority is immune from tort liability, unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury. MICH.COMP.LAWS § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Id. at § 691.1407(7)(a).

Here, there is no question that Taylor and Harding were acting within the scope of their authority as police officers while employed by the City of Warren, during the events at issue. In light of the Court's finding relative to the officers' conduct during Plaintiff's arrest, it finds a question of fact exists as to whether their conduct was grossly negligent.

## IV.  CONCLUSION

In accordance with the opinion issued above, the Court **GRANTS** summary judgment to Defendant City of Warren and **DENIES** summary judgment to Taylor and Harding on Plaintiff's claims of excessive force, gross negligence, and assault.

**IT IS FURTHER ORDERED** that the parties are to appear for a settlement conference to be held on **May 30, 2007, at 2:00 p.m.**  Clients must be present.

**IT IS SO ORDERED**.


                              s/Marianne O. Battani
                              MARIANNE O. BATTANI
                              UNITED STATES DISTRICT JUDGE

Dated: April 27, 2007


## CERTIFICATE OF SERVICE

Copies of this Order were served upon John J. Gillooly and Christopher J. Trainor on this date by ordinary mail and /or electronic filing.


                              s/Bernadette M. Thebolt
                              Deputy Clerk

11